And move to our last case this morning. Arandell Corporation v. Xcel Energy May it please the Court, Jennifer Coy for Petitioners. The District Court certified a class without engaging with Rule 23 evidence or disputes. Plaintiffs tell you that that doesn't matter because, in their view, having a Daubert-qualified expert is enough to satisfy Rule 23. It isn't. Vacator is required for two reasons. One, just because evidence is admissible does not mean that it's persuasive or carries a particular burden of proof. But Rule 23 imposes a burden on plaintiffs to prove predominance by the preponderance of the evidence. West, Zabo, and Parco from this Court make clear that that requires the District Court to examine what the Rule 23 evidence actually shows, to resolve Rule 23 disputes, and to, quote, investigate the realism of plaintiffs' common impact theory in light of defendants' counter-arguments. Two, that didn't happen here. The District Court here, which is now accused, first referred to the MDL Court's Daubert opinion. That opinion admitted all sides' experts and then denied certification. The District Court here then tells us, in a conclusory fashion, that plaintiffs have a facially credible theory. It's on page 21 of the opinion. And the Court stops there. But Rule 23 is not an evidentiary admissibility standard, and it is not a just take the evidence, plaintiffs face value. So, Ms. Coyne, let me start this way. One of the common questions here is whether the defendants acted in concert to manipulate prices, correct? We would dispute that, but that's not the issue here. For these purposes, we're focused on antitrust injury, yes, Your Honor. I'm trying to bank shot, so bear with me just a moment. Would you agree that that is a common issue, and whether it's a common issue is central to whether the class can be certified? Whether there's a conspiracy? Whether there was a conspiracy, yes. It is our position that that is, in fact, not a common issue, Your Honor, but that is not the focus of our appeal. Our focus of our appeal is on antitrust injury. I understand, okay. I'm trying to get across. Let me just be very blunt. Right. Does a plaintiff have to prove the conspiracy to get the class certified? Or do they simply have to prove it's common evidence for all the defendants and all the plaintiffs? Absolutely, Your Honor. That's good enough, right? Yes. The plaintiff does not have to prove the merits of the ultimate question of conspiracy or antitrust injury, and this is a critical issue that I'd like to address. The dispute here is not the merits question of can plaintiffs actually show antitrust injury. The dispute here is do plaintiffs have a common method of proof of antitrust injury. The core dispute here is essentially is predominant satisfied? Is there a common method to prove this, or instead, will individualized issues predominate the question as to antitrust injury? Well, the counterfactual here, right, if certification is denied on this basis, would be that antitrust impact or antitrust injury would be litigated individually, correct? Yes, exactly, Your Honor. Which is what's key under Amgen and Dantzel and the court's precedent is that the reason this issue has to be addressed now and vacater is required is because this is not, is what plaintiffs tell you, an up-down on the merits. Consider these two examples. Imagine that the district court on remand determines that plaintiffs have not shown what they say they've shown, which is a cohesive market that moves up and down together so common proof can in one stroke prove antitrust injury for the class. Well, if they haven't shown that, that doesn't mean that no plaintiff can prove antitrust injury. Right, so the alternative is individual trial by individual trial with these same experts debating antitrust injury for a particular plaintiff, correct? Not necessarily with these same experts, but perhaps, yes, but it all will come down to the individualized factors of how, when, and where any individual purchase and individualized issues of antitrust injury will predominate. And, Your Honor, I'd like to show you the point on the flip side, too. Imagine a potential situation where, in a different case, the plaintiff's expert did show a national market that was cohesive and moved up and down together. Well, in that instance, the fact that plaintiffs could prove that with their experts does not mean that they will prevail on showing antitrust injury. So, of course, you can certify a class that will win or will lose. What that means is purely that they would have a common method of proof that individualized issues would not predominate because, in that instance, they could show injury on a class-wide basis. And whether they actually show it or not would remain to be seen. And the core point here is that this is an issue that had to be addressed head-on right now under Sabo, West, and Parco because this is the core question of, have they shown predominance, which they have a burden to prove? And I'd like to give you some concrete examples of what the district court should have grappled with here but didn't. Plaintiff's theory is that they have this cohesive market that moves together across everywhere. And so the same proof could take a class member who purchases with a fixed price on the first day and could prove injury for that class member and somebody who purchases on the last day in a different location with a trigger purchase price method. And the question is, have they actually proven that? Well, let's look at what their evidence actually shows. Their evidence shows, their own experts say, that the prices don't move together. In fact, that when fixed prices are up and show impact, then monthly index prices are down and don't show impact. If you look at Harris' Exhibit 7, what it shows is at most sporadic impact. Could Judge Conley have done a rigorous analysis without disqualifying these experts? Yes, absolutely, because Daubert is a completely different inquiry than Rule 23. So absolutely, Your Honor. And that's precisely what the MDL court here. The MDL court here said, I'm going to admit all of these experts, but certification isn't warranted. And the core point here, because the court's order is so thin and conclusory and doesn't contain any engagement with two sides of complex Rule 23 fights, because it's so thin, plaintiffs tell you, well, Daubert is enough. But every case to address that issue tells you, Daubert is not enough. Daubert is a gatekeeping function that looks at, is the methodology reliable? Is this junk science? Does this use econometrics? It doesn't look at the results coming out and whether they carry a particular burden of proof. But Rule 23 imposes an evidentiary burden of proof on plaintiffs to prove predominance by a preponderance of the evidence. And let me give you an example there, too. Imagine that there's an expert who wants to rely on an x-ray to show damage to a leg. That expert, relying on the x-ray, makes complete sense. An x-ray is a time-tested method that isn't subject to challenge and is not scientifically reliable. But what that x-ray actually shows is the Rule 23 question. Once you've already passed Daubert and said this is admissible, then the Rule 23 question is a completely different inquiry of, does this evidence, with its flaws as it is, taking this evidence, does it prove predominance? Does it prove that antitrust injury is capable of being proven for the whole class through common proof? And it doesn't. And taking you back to some concrete examples. When you say it doesn't, are you talking about the decision doesn't, or are you talking about the proof? The proof. And the proof is the key point. Because if you look at page 21 of the district court's order, what you see is the court is taking plaintiff's theory at face value. It is doing exactly what Parkos says you can't do. Parkos says you have to investigate the realism of this injury model based on the counterarguments. And that's what doesn't happen here. I mentioned the problems with plaintiff's evidence in and of itself not showing what they wanted to show. But think about what the defendants' experts show. Defendants' experts show that plaintiff's model, plaintiff's common impact theory, is completely divorced from the reality of the evidence. Is there a circumstance in which there could be a rigorous analysis engaged in by Judge Conley, which would have resulted in a class certification decision that would have been a more robust decision here? Yes, Your Honor. It's our position that when you actually consider this record that you couldn't certify a class. Okay.  I'm sorry. But our fight here is not saying that you need to go study the evidence and agree with us on that. Our fight here is that this court's precedent and the Supreme Court's precedent is clear that the district court has to engage with all evidence and actually examine it and resolve the disputes underlying Rule 23 predominance to determine whether plaintiffs have actually proven predominance. And there's a great line from the Pretty case that says at the very end that explanations matter, and complex rule certification issues can't be decided by judicial fiat. In this court, Santiago's case is on board, and the Fifth Circuit's recent Chavez case really explains the point. And this isn't just some silly requirement foisted on busy judges. This is because real important issues are at stake. So, Ms. Conley? Yes, Your Honor. Sorry, you were wound up? I wasn't sure. Go ahead and finish it up. Class actions are the exception to the ordinary rule, and so the stringent requirements exist to prove that you can have a class action. We agree Rule 23 is important. Could I ask you to address the Tyson Foods case? In particular, this passage, which is at 577 U.S. 459. Once a district court finds evidence this is on a predominance issue, or on a class issue, to be admissible, its persuasiveness is in general a matter for the jury. This was about the Donning and Doffing survey. Reasonable minds may differ as to whether the average time this expert calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near exclusive province of the jury. The district court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed that the employees spent roughly equal time Donning and Doffing. Why doesn't that reasoning tell us that all of the debates between plaintiffs and defendants experts about this really should wind up going in front of a jury to resolve whether plaintiffs can actually prove antitrust impact at trial through common proof? First, I see my time is already into my rebuttal time.  Please. Absolutely, Your Honor. First, I'll say I point you to the lamentable opinion out of the Third Circuit that directly addresses this point head-on in a completely on all fours analogous antitrust case. The answer is twofold. Number one, Tyson Foods was a unique FLSA case with burden shifting. There, first of all, the court was looking at the merits issues, not at Rule 23 issues, when it made that statement. And the unique burden shifting aspects there were the defendants had a burden to keep records. And when defendants didn't actually keep records in the FLSA context. The comment here, though, is with respect to class certification or in the FLSA context, a collective action, right? Right, Your Honor. So what that's telling me is we're in this very delicate area where class certification decisions by the judge are overlapping, intruding upon merits issues. And it's telling us be careful and, in essence, defer to a jury's power to decide that issue. Yes, Your Honor. This is not going to the merits question. As we discussed earlier, the merits question is can you prove antitrust injury? This is purely the Rule 23 question of do they have a common method of proof? Having a cohesive market is not an element of their claim, unlike what they were discussing in Tyson's Food. Having a cohesive national market, what the fight is about here and what needed to be addressed is purely their method of showing predominance, showing that they have a common method to prove antitrust injury. And let me be clear, that issue never goes to the jury. How is that different from the Tyson question, which is can plaintiffs prove they're donning and doffing through this survey? Because in Tyson Foods, and Lamdacolle explains this, and Tyson Foods can't be read. So Lamdacolle seemed pretty reluctant to go along with Tyson Foods on this. And this court since, when you look at Gores Motels and Howard, countless opinions coming out after Tyson Foods, and the U.S. Supreme Court, Goldman Sachs, nobody has read Tyson's Food to overturn the entire Rule 23 system, which is what would be happening there. Because in an issue like this case, the core fight here is not the merits question of can they prove antitrust injury, but have they proven by a preponderance of the evidence that antitrust injury is capable of being proven through common proof at trial. And Tyson's Food was addressing the unique FLSA context where when the employer didn't keep records, the burden shifted. Plaintiffs didn't have to actually prove anything because the representative sample was allowed to be used. And it was a completely different circumstance. And in that instance, the question went to the merits because the representative sample, the fact that this was a common issue was already a baseline in that unique FLSA context. Here, if you look at, I point you to hydrogen peroxide, to Zabo, West, and Parkway, I see my time is up, but Tyson Foods can't be read to have overturned the entire Rule 23 construct and the burden of proof on plaintiff to prove predominance by preponderance of the evidence. With my colleague's indulgence, I'd like to follow up. We've got a lot of material here. First of all, am I understanding correctly? A lot of people paid, what, $340 million in fines. Other people pled guilty. This is not an imaginary conspiracy. Okay. Is the problem here of antitrust injury unique to Wisconsin? Would we face a similar problem? Is this about geography of where the conspirators were and were acting and manipulating prices? There are aspects that are unique to Wisconsin because Wisconsin has, for instance, the unique situation in which the vast majority of the class didn't purchase directly from defendants. But the core problem here is that the district court didn't engage with the Rule 23 fight. And that could apply anywhere. That's not my question. Okay. I'm sorry. I'm trying to understand why plaintiffs need to prove a national market given the conspiracy. They don't in theory. What they have offered is this theory, and the focus of our fight is not on whether it's national or not. They're saying that there's a cohesive market. They're saying that everything moves together. And that's their theory of why they can use the same evidence, why antitrust injury is capable of being proven for the whole class with the same evidence. And that's what the court didn't engage with, was have they actually proven that? Okay. Thanks. And then could I also ask you, obviously the Supreme Court has told us in general that these sorts of cases usually are suitable for class treatment. And can you point us to horizontal antitrust cases where class certification was denied for lack of predominance? Yes, Your Honor. The most on all fours case I can point you to is hydrogen peroxide. Right. Which is hard for me to reconcile with Tyson Foods. Well, after hydrogen peroxide, you have blood regents agreeing with it. You have lamticol. And if you look at the reasoning in Clean Products, for example, if you apply the exact reasoning here, applying that reasoning to these facts requires vacater. Because what the Supreme Court and this court's precedent says is that there needs to be engagement. And I'm not asking you, again, to rule that the class can't be certified. You are, but it's understandable you're backing off of that position because I don't think that has a leg to stand on. Well, we've asked for vacater, and the reason we've asked for vacater is because this court's precedent, including just in the past year when you look at Gores, Motels, and Howard, this court's precedent consistently tells you that Rule 23 is not a pleading standard. You can't, as the district court here did, take the allegations at face value. You instead have to investigate the realism of what plaintiff's model of common impact actually shows in light of defendant's counterarguments. And when you read the order, you see no engagement or investigation of the model and its realism, how it's tied to the evidence, and the fact that it's, in fact, directly contradicted by plaintiff's evidence. And you see no engagement with defendant's experts' proof that, in fact, common evidence cannot be used to show antitrust injury. One other quick question. We're here entirely under state antitrust law, correct? Yes, Your Honor. For the full consideration remedy under Wisconsin law, do plaintiffs need to prove antitrust impact under that statute? Yes, Your Honor. Under the Wisconsin law, if you look at Durzan and the City of Madison case. But, Your Honor, this highlights the critical point that I'm making, which is that the district court didn't engage with any of this. The district court didn't tell you what it thought about that. And I point you to this court's Santiago case on that point. Thank you, Your Honor. Thank you very much. Mr. Billings. May it please the court. My name is Ryan Billings from Konamian Michaelis, SC. We represent the plaintiffs in the class of Wisconsin businesses and commercial entities certified by the district court below. The defendants would require us at the class certification stage to prove essential elements of our merits case. That would impose an unbounded, unworkable, unreasonable burden on busy district courts. It would also contravene settled guidance from the Supreme Court and this court that a district court should not delve further into the merits than required, that a district court should not turn class certification proceedings into a dress rehearsal for the trial on the merits, and, most importantly, that a district court should not invade the constitutional province of the jury as the finder of facts. If the test is wrong, it should be rejected, and the district court's opinion below should be affirmed. But stepping back a little bit, how did we get here? This case is in its 17th year. It spent 12 years in consolidated litigation before the NBL court. During that time, over several million pages of documents were exchanged, 160 depositions were taken, thousands of pages of written discovery materials were exchanged, and tens of thousands of pages of expert materials reports and supporting materials were exchanged. The defendants filed more than 40 dispositive and dauber motions, leading to six appeals to the Ninth Circuit and one to the U.S. Supreme Court. There was a lot of water under this bridge before this case ever came back to Wisconsin. And importantly, by the time this case was transferred back to the district court below, at least two courts had rejected every single substantive criticism that defendants offered to the work of plaintiffs' experts. First, at defendants' insistence, before the NBL court, class certification and daubert were briefed and argued simultaneously. The defendants made the same arguments in both briefs. In the context of their daubert motions, the NBL court rejected these criticisms. It said that plaintiffs' experts satisfied daubertmuster, they meet all the requirements of Rule 702, they're based on sufficient data, reliable methods, reliably applied to the facts of this case. Second, when this case went up to the Ninth Circuit on class certification, defendants made the same arguments again, and the Ninth Circuit rejected them as well. It said these speak to damages, and individual damages questions as a matter of law cannot defeat class certification. This was settled law of the case before the district court even began to consider plaintiff's 2020 motion for class certification. In its decision, the district court accurately recited this history, it correctly articulated the principles governing class certification, and it addressed the primary legal and factual challenges the defendants raised to certification in this case. Legally, defendants argued that the fact that plaintiffs' experts passed daubertmuster is not in and of itself a guarantee of automatic certification of a class. The district court addressed expressly this argument and agreed with it, commenting fair enough. And with all due respect to our opponents, we do not argue that daubert satisfaction of daubert itself gets you a class. We have never argued that. What we argued was in the question that the court asked us, which is whether the district court properly assessed the party's expert opinions. Every court of appeals that has been asked the question, what should a district court do when competing expert views are critical to class certification, every court of appeals has answered it the same way. It has said, do a daubert review. And that's what happened here. The district court also addressed the primary factual dispute, whether, as plaintiffs allege, there's this uniform national interrelated market in which rising prices anywhere affected prices everywhere, or, as defendants assert, there is no such market. And pricing was predominantly varied by location and varied by purchase method. The district court addressed this dispute seven times in its opinion in the context of three separate Rule 23 factors. It grappled with this issue. And what did it say? It said three times. Plaintiff's theory is premised on a single national market for natural gas. That's on page 23. It made the same comment again on page 21. And it made it again on 23. And it made similar comments twice in 21, 22, and 26. Seven times. It said that is the foundational premise of the Harris-Dwyer model or the HDM by which we intend to prove antitrust injury. If that premise is incorrect, then the model fails. We can't be half right on that. We're either all right or we're all wrong. And for that reason, regardless of what the jury thinks of this, the jury says, Plaintiffs, you're absolutely right. Or if the jury says, Plaintiffs, you're absolutely wrong, the result is going to be common to the class regardless of how it is resolved. And for that reason, the district court concluded that that dispute is not material to certification factors because the law is settled that a class can be certified if it's doomed to fail just as easily as it is certain to win. That opinion is entirely correct. Now, I want to address a couple of questions that the court raised in response to my opponent's argument. One funny story, Tyson Foods 459, right on the top of my outline, because that is the key question. The Supreme Court answered it. It said once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. And the standard is whether no reasonable juror could find the evidence that the plaintiffs are correct. That's the standard. We don't have to prove on the merits that our expert opinions are more persuasive. We don't have to show that more likely than not we can establish antitrust injury for every class member. That is not the standard. How do we know that? Because the court said that in Messner, Judge Hamilton's decision to which Chief Judge Sykes joined. That case was... It doesn't matter, and it was a long time ago. It doesn't matter who wrote them, who was on them. It's a decision of the court. Okay. So what do you say to the defendant's points that your own experts' data shows supposedly related prices moving in opposite directions, depending on geography, depending on pricing methods? That's two different questions, but I will address both of them. So their argument that the prices move in opposite directions, that is a very specific phenomenon which we addressed in our brief, and this is about monthly index prices getting stale towards the end of a month. Dr. Dwyer noticed you have this index price. It comes out at the beginning of a month, and that index price may be trending downward, but if you see at the back end of the month prices going up, then the fixed price is likely to go up even though the monthly price is going down. That's just because it's more dated. It's old information. It's a temporary phenomenon that's easily explained. Dr. Dwyer went through that. As to geography, Drs. Harris and Dwyer both said that this is a fungible commodity that is traded by standardized contracts in highly liquid hubs all over the country. Every second that we are talking, there is gas moving from Texas to Wisconsin because Wisconsin does not produce or did not during the past period produce any natural gas. It would not make economic sense for there to be persistent discrepancies in natural gas prices by location. If the price in Henry Hub, Louisiana, is very high and the price in Chicago is very low, then what's going to happen? People are going to sell at Henry Hub, and that will bring the price down. Prices will equalize over time. They're not arguing that they move in lockstep. They're not arguing that they move uniformly, but they are arguing they are highly correlated, and simple foundational economic principles suggest that is so. That's what happens with a classic commodity like this. I do want to return to Messner, though, because it does give us the answer to the question why the defendants are wrong. Now, we pressed the defendants in our Appellee Brief to explain exactly what. What fact did the district court need to find that it didn't? What proof do you assert that we have to demonstrate in order to certify a class? And we finally got the answer in the reply brief, page 18. They argue that plainest burden is to show that antitrust impact is, in fact, common across various indices, locations, and purchase methods. That is a key element of our merits case. That is what they're arguing that we have to show. What happened in Messner? That was an antitrust case involving a hospital merger. The district court refused to certify a class. It went up to this court. This court reversed. The key issue was predominance, and specifically antitrust injury. And what this court ruled was that the district court below required an overly strict standard. It required a heavy burden of proof that is not what the law requires. Why? Because the district court argued that unless the price increases were uniform across different contracts negotiated with different providers for different services that changed over time, unless those price increases were uniform, no class could be certified. This court said that's an error of law, and it reversed. And it said, and I quote from page 818, Under the district court's approach, Rule 23b-3 would require not only common evidence methodology, but also common results for members of the class. That approach would come very close to requiring common proof of damages for class members, which is not required. To put it another way, the district court asked not for a showing of common questions, but for a showing of common answers to those questions. Rule 23b-3 does not impose such a heavy burden. We have common evidence. It's defendants' own sales. It's defendants' own false reports to the trade indices. We have a common methodology. It's the Harris-Dwyer model. What defendants challenge is whether our results will be common to every class member. We don't need to show that. And in fact, we don't need to demonstrate that every class member was injured in order to certify a class. That is not our burden. That is not the law. Every court that has squarely addressed the question at issue here, which is when you have these conflicting expert disputes, what do you do? You do a Daubert review. That happened here. That satisfies it. That's necessary but not sufficient is the principle. Correct. That emanates from those cases, right? And Judge Connolly appears—it's a little unclear, but it appears as though he was treating that as sufficient, that admissibility establishes what needs to be established under Rule 23 without further inquiry and evaluation of competing views of the defense expert just because their spatial plausibility to the plaintiff's experts isn't enough, but he treated it as enough once the admissibility— once he adapted the admissibility determination of the MDL court. I respectfully disagree with that assessment, and let me tell you why. So he talks about Daubert in one section and then goes into the Rule 23 factors in a different section. In that Daubert section, he uses the words spatially credible, or it may be a credible theory. But what he's answering is the question, well, you know, the fact that you satisfy Daubert does not automatically mean you can certify a class. He agrees. Fair enough. But they have a spatially credible theory. It at least gets to a jury. The evidence that we intend to present, whether or not it's seven plaintiffs or a class, is going to be the same. We are going to present the Harris-Dwyer model. That is how we show antitrust injury. We just would like to take the class members with us on that journey. This case looks an awful lot like hydrogen peroxide. You want to address that? Absolutely. Do you have to disagree with it? I very much disagree with that. First of all, in hydrogen peroxide, the plaintiff's expert said, I don't have a model for antitrust injury, but I will come up with one later. Trust me. And the district court said, that's enough. In that case, the district court believed it was legally prohibited from considering the views of defendant's experts. That is an error of law. The Third Circuit was also cleaning up precedent which suggested that you were absolutely forbidden from discussing merits issues and clarified that when they touch on class certification, you might have to go there. And in addition, it was not like this case because it wasn't a single product that was completely fungible, sold the same way, used for the same purpose. You burn it. It was several different concentrations of hydrogen peroxide that had fundamentally different qualities, were sold in different markets, used for different purposes, and there were two other products actually involved, sodium percarbonate and sodium perborate. Several different products. There was no model of antitrust injury presented to the court and the district court seemed to view the plaintiff's expert's affirmation that it would come up with a model later as sufficient. How do we know that that is not the controlling law in the Third Circuit now? Because seven years later, in the case of in-rate blood reagents, when the question came to the court, what do you do when competing expert views are critical to class certification? It said, but every other court of appeals to address this issue has said, do a Daubert review. And returning back to Chief Judge Sykes' question, at the beginning of the pending, he talks about Daubert and why Daubert does not get you to Rule 23. Then he lays out the Rule 23 standards and says the plaintiff must demonstrate Rule 23A and the requirements of Rule 23B. He says this is an evidentiary standard. He says if there are disputes of fact, I may be required to hear evidence and resolve them, citing this court's decision in Messner. But then goes on to say, but by the same token, I am not permitted to turn class certification proceedings into a dress rehearsal for a trial on the merits. That is what defendant standard would require. Because to get to antitrust injury, you have to start with how is the market structured? How did defendants manipulate it? How did that manipulation cause antitrust injury? That is 3 quarters of our case on the merits. All that's left is damages. So we have to build up from the ground up that entire model and convince the district court it is true and it is more persuasive than defendants contrary to certified class. That is not the law. We know that. Tyson Foods very clearly said that the standard is not you have to show your merits case by preponderance of the evidence. The standard is can any reasonable juror side with you at trial? And I go back to where I started, which is those 40 dispositive motions. This case has been tested every possible way. It has survived every such test. We are taking this case to trial. And the MDL court ruled repeatedly that if the jury believes the evidence we have put forth, it may enter judgment in our favor. This is not a case that is based on illusory conduct. It is real, real harm to the class members in Wisconsin. The case has been battle tested. It has been proven that if the jury believes our evidence, we will succeed. And I turn to the court's decision in Clean Products that said the standard is whether the evidence, if believed, could show antitrust injury through evidence common to the class. Our model can do that. There are complaints that defendants make, complaints rejected by two separate courts, the Ninth Circuit and the MDL court. But those complaints do not undermine the premise of the model and the fundamental reliability of it. And if you look at our brief, every time the defendants are specific about what's wrong with our model, we have an answer with a citation to the record. And that's why those courts rejected it. And that's why there is no phantom problem with this single market rule. Thank you. Thank you. Ms. Coy, your time had expired, but I'll restore some of it because we kept you at the podium. So you can have an additional three minutes to rebut. Thank you so much, Your Honor. I really appreciate that. Thank you. Plaintiffs point you to the court's order. But I want to emphasize, and if you look at page 21, you'll see that what the court does is exactly what Chief Judge Seitz says, is the court cites the Daubert and then takes plaintiff's theory at face value. The court uses the word facially credible and just takes it without actually engaging and analyzing. For instance, the fact that these models, plaintiffs say they have, don't even apply to the named plaintiffs who are supposed to represent this big class. How could this actually show that antitrust injury is capable of being proven for the whole class? Our point here, they dispute all sorts of facts. They say they have answers. We say they don't. But our point here is if you look at Szabo and West and Parco and Howard and Priddy and Gores Motels, and the list goes on and on, what this court's precedent to date tells you is that the district court has to actually engage with the Rule 23 disputes. The district court has to actually examine both sides, all, as Goldman Sachs and Allstate tell you, has to examine both sides' evidence to see if it actually proves predominance by the preponderance of the evidence. And that's what's lacking here. The order contains no analysis, no engagement. So if the district judge, if we send this back and the district judge says, in essence, I've looked at all these reports. Plaintiff's reports look pretty good to me. I think there's a national market here. You want to be able to dispute that in front of the jury, correct? There might be some overlap of the merits, which this court and the Supreme Court has said is not a barrier to the Rule 23 issues. I understand that. But no, we will not be able to. But you want this to be, in essence, heads we win, tails we don't lose, right? No, Your Honor, in the sense that we will never be able to argue to the jury whether or not there is a cohesive market that moves up and down together such that common proof could satisfy the entire class in one stroke. And that's why Rule 23 imposes such a rigorous analysis requirement here. If in the real trial, they have a plaintiff come who uses their evidence to show, okay, here's how I bought gas, my method, my way, and then that's supposed to prove for other class members, that's a real problem if they haven't shown that they have a method that works to actually show that everything moves together. Let's assume the class has been certified, that the district judge resolves the factual issues that you say need to be resolved here, full engagement, and Judge Peterson rules in favor of class certification. So this plaintiff has shown the Harris-Dwyer model works, and there's a national market. You want to be able to dispute that in trial? Again, we might dispute aspects of a national market, but we will not be able to dispute the core Rule 23 question of have they proven predominance. And that's the key issue. If this were the merits question of  then to your point, this would go to the jury. There would be no place for the district court to be analyzing that. But this is not the question of can they prove antitrust injury? It is the core question of, as Dansell put it, do they have common proof? Their question is, is there common proof of antitrust injury? And that will never be addressed by the jury. That is purely the role of the judge to address in the Rule 23 context, and the jury will never be given the opportunity to revisit that question. And so that's why this has to be addressed now, Your Honor. Thank you so much. And we request that you vacate the district court opinion. Thank you. Thanks to all counsel. The case is taken under advisement.